# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Mitchell A. Fuchs, | ) | |
| | ) | |
| *Defendant*, | ) | |
| | ) | |
| v. | ) | Case No: 13 C 50099 |
| | ) | |
| United States of America, | ) | |
| | ) | |
| *Plaintiff.* | ) | Judge Frederick J. Kapala |

## ORDER

Fuchs' motion to vacate, set aside, or correct sentence pursuant to § 2255 [1] is denied. Certificate of appealability is denied. This case is closed.

## STATEMENT

On November 4, 2008, a jury convicted Mitchell Fuchs of thirteen counts of wire fraud and one count of interstate carrier fraud which revolved around his fabrication and falsification of documents in order to permit his clients to qualify for subprime loans. After a successful appeal challenging his original sentencing, Fuchs was ultimately sentenced to 117 months of imprisonment and ordered to pay $183,956.75 in restitution. Currently before the court is Fuchs' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 based on a number of arguments. For the reasons which follow, Fuchs' motion is denied.

### I. BACKGROUND

Based on the evidence presented at his criminal trial, Fuchs worked for Mortgage Solutions, a mortgage broker, that helped its clients finance real-estate transactions. The jury convicted Fuchs of doctoring residential loan applications in a number of different ways to make his high-risk clients appear to be less risky, and thus qualify for various subprime loans. Fuchs received payment on a commission basis for his work. When the FBI learned of his behavior and raided Mortgage Solutions, Fuchs took a job with another broker, Leader Mortgage, and continued his behavior unabated. He was eventually connected to fourteen fraudulent loans, many of which had ended up in foreclosure. During both his trial and sentencing, Fuchs was represented by retained counsel, David Caulk.

At sentencing, the government argued for the imposition of a two-level enhancement to the guidelines range based on U.S.S.G. § 3B1.3 on the grounds that Fuchs abused a position of trust in the commission of his crime. Following precedent from other circuits, this court applied the two-level enhancement, which resulted in an advisory guidelines range of 100 to 125 months. The court varied upward from the advisory guidelines range and imposed a sentence of 144 months of

imprisonment, plus restitution. Fuchs appealed, raising only the § 3B1.3 enhancement. On appeal, Fuchs was represented by a different appointed appellate attorney, April Sellers. The Seventh Circuit agreed with Fuchs, holding that the two-level § 3B1.3 enhancement does not automatically apply to the broker-mortgagor relationship and that it did not apply specifically in Fuchs' case. See United States v. Fuchs, 635 F.3d 929, 931 (7th Cir. 2011). Accordingly, the Court vacated and remanded for resentencing. Id.

After briefing and argument, but prior to the release of the opinion while the case was still pending before the Seventh Circuit, Sellers moved to withdraw from her representation of Fuchs. In her motion, she indicated that it had come to her attention that her firm, Baker & Daniels, LLP, represented ACC Capital Holdings, one of the victims whose agents testified at Fuchs' trial and one of the entities to which he owed restitution. The motion was filed nearly ten months after oral arguments and briefing were complete before the Seventh Circuit, but approximately two weeks before it released its opinion. In the motion, Sellers indicated that she did not believe she had a conflict, as the representation of ACC Capital Holdings was on a different matter and did not limit her representation of Fuchs, but moved to withdraw in any event at the request of Fuchs. The Seventh Circuit denied Sellers' motion to withdraw five days after releasing its opinion, but denied it without prejudice to raising the issue again in the district court. United States v. Fuchs, No. 09-1611, slip op. at 1 (7th Cir. Mar. 22, 2011). Following that denial, Fuchs filed a pro se motion for new appellate counsel and requested that he be permitted to raise additional unidentified issues on appeal. The Seventh Circuit denied Fuchs' motion. United States v. Fuchs, No. 09-1611, slip op. at 1 (7th Cir. Mar. 30, 2011).

On remand, this court permitted Sellers to withdraw and appointed a new attorney to represent Fuchs. Fuchs' new attorney moved the Seventh Circuit to withdraw its mandate in the original appeal, in order to assert additional issues, but that request was denied. United States v. Fuchs, No. 09-1611, slip op. at 1 (7th Cir. June 22, 2011).

At resentencing, the new advisory guidelines range was 84 to 105 months. This court again varied upward from the advisory guidelines range and imposed a sentence of 117 months. Fuchs appealed, but his new appointed attorney moved to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no non-frivolous arguments to pursue on appeal. Fuchs filed a memorandum in opposition, but the Seventh Circuit ultimately ruled that the appeal was frivolous, permitted the withdrawal, and dismissed the appeal. See United States v. Fuchs, 458 F. App'x 552, 553 (7th Cir. 2012). Fuchs filed a pro se motion for rehearing, raising some of the issues now raised before this court, but all of the active Seventh Circuit judges, and the entire original panel, rejected his request for rehearing. See United States v. Fuchs, No. 11-2657, slip op. at 1 (7th Cir. Mar. 21, 2012).

Now Fuchs has filed a motion to vacate, set aside, or correct his sentence pursuant to § 2255. In his original motion, Fuchs set out broad conclusory allegations of wrongdoing based on the actions of the courts and attorneys involved in his prosecution. The United States responded, requesting that the court permit Fuchs to file an amended motion to narrow the issues raised to cognizable legal arguments and add clarity to those claims. Fuchs has filed such an amended

motion,[1] and in it has set out six grounds for relief, although each ground has multiple sub-issues identified in a shotgun-style request for relief (most of identified issues are still raised in a perfunctory and conclusory manner). The broad grounds, which this court will use to orient its analysis, are: (1) that the Seventh Circuit erred in at least eighteen ways in its various opinions, (2) that a conflict of interest existed with Sellers, (3) that his appellate counsel was otherwise ineffective on a number of grounds, (4) that his trial counsel was ineffective on a number of grounds, (5) that the United States committed various kinds of prosecutorial misconduct, and (6) that this court engaged in various kinds of misconduct and error.

## II. DISCUSSION

Relief under § 2255 is "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, habeas relief under § 2255 is "reserved for extraordinary situations." Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996). "To succeed on a § 2255 petition a convicted defendant must show that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." Id.

### A. Seventh Circuit Error

Fuchs first identifies at least eighteen ways—many of which are factual or procedural "mistakes"—he believes the Seventh Circuit erred in its various orders and opinions regarding his case. The court need not set out all the different bases on which Fuchs claims the Seventh Circuit erred because, quite simply, this court is not authorized to review the actions of the Seventh Circuit a § 2255 review. See Jordan v. United States, Nos. 2:12CV529-PPS, 2:09CR32-PPS, 2013 WL 6560139, at *3 (N.D. Ind. Dec. 13, 2013) ("In any event, no error by the Court of Appeals can possibly support relief from the district court on a § 2255 motion. It goes without saying that this trial court does not give appellate-type review to the actions of the Court of Appeals that sits above it."). The only entities capable of correcting or reviewing a Seventh Circuit's opinion are the Seventh Circuit itself, either in a panel rehearing or sitting en banc, or the United States Supreme Court. This court is neither.[2] Accordingly, the motion is denied as to all of the purported errors by the Seventh Circuit identified in Fuchs' motion.

### B. Conflict of Interest

Fuchs next argues that appointed appellate counsel April Sellers' firm's representation of one of the victims in an unrelated proceeding was a conflict of interest. Although Fuchs does not set out how this argument would provide him grounds for relief under § 2255, the court presumes he intends to raise the alleged conflict of interest as a violation of his Sixth Amendment right to effective

---

[1] The amended motion is styled as a Reply to the United States' Motion to Suspend Briefing Schedule. To avoid confusion, the court will refer to it as his amended motion, and refer to Fuchs' reply to the government's response to that motion as his "reply brief" throughout.

[2] The court's opinion, of course, is not to be read as endorsing Fuchs' arguments that the Seventh Circuit in fact made any errors.

counter.

"[D]efense counsel's conflict of interest can violate a defendant's Sixth Amendment right to effective assistance of counsel." Freeman v. Chandler, 645 F.3d 863, 868 (7th Cir. 2011). "There are two ways to assert a claim based on counsel's conflict of interest." Hall v. United States, 371 F.3d 969, 973 (7th Cir. 2004). "One, under Strickland, the petitioner may show that his attorney had a potential conflict of interest and that the potential conflict prejudiced his defense; or two, the petitioner may proceed under Cuyler, where he must establish a violation by showing that an actual conflict of interest adversely affected his lawyer's performance." Id. (citations and quotations marks omitted). Demonstrating an "adverse effect" is easier than showing prejudice for the purposes of Strickland, so that showing an actual conflict of interest significantly reduces the burden on the movant. See id.

The court need not determine whether Sellers had an actual conflict or a potential conflict, as Fuchs has no right to relief even under the lower standard of showing an adverse effect. "A petitioner demonstrates an adverse effect by showing that there is a reasonable likelihood that his counsel's performance would have been different had there been no conflict of interest." Id. at 974. In this case, Fuchs does not dispute Sellers' assertion in her motion to withdraw in the Seventh Circuit that she was unaware of the conflict when she wrote the briefing and presented argument to the Seventh Circuit.[3] Fuchs has not shown that Sellers' performance would have been different had no conflict existed, because, at the time of her performance, she could not have been affected by a conflict of which she was unaware. Accordingly, the motion is denied as to ground two.

## C. Ineffective Assistance of Appellate Counsel

Fuchs next argues that Sellers was otherwise ineffective on a number of grounds. "Appellate counsel's performance is . . . measured against that of an objectively reasonable attorney." Brown v. Finnan, 598 F.3d 416, 425 (7th Cir. 2010). The court applies the familiar Strickland test, requiring a movant to show that appellate counsel's performance was (1) deficient and (2) prejudicial. See id. at 419. "An appellate counsel's performance is deficient if she fails to argue an issue that is both obvious and clearly stronger than the issues raised." Id. at 425. To show prejudice, a movant "must show that there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." Id.

Before addressing the arguments individually, the court notes that Fuchs has failed to develop or provide any factual support or record citation for many of his claims. Many of the arguments take the form of "And what about this? This was an error, right?" as though the brief was drafted with an eye towards simply identifying the issues and hoping the court will engage in a lengthy investigation of the record on his behalf. See United States v. Holm, 326 F.3d 872, 877 (7th Cir.

---

[3]In his reply brief, Fuchs argues that Sellers' lack of due diligence in finding the conflict to begin with should result in disciplinary proceedings against her. Indeed, throughout the motion, amended motion, and reply brief, Fuchs regularly argues that various individuals in the case (witnesses, attorneys, and the judge) engaged in discipline-worthy, contempt-worthy, or criminal behavior for which they should be punished. Punishing others, and disciplinary action against an attorney outside of the Strickland standard, is not a ground for relief under § 2255. See Allen v. McCurry, 449 U.S. 90, 98 n.12 (1980) (noting that the "unique purpose of habeas corpus" is the "release [of] the applicant for the writ from unlawful confinement").

2003) ("It is not the obligation of this court to research and construct the legal arguments open to the parties . . . ."); Greer v. Bd. of Educ., 267 F.3d 723, 727 (7th Cir. 2001) ("[A] lawsuit is not a game of hunt the peanut . . . . [N]either appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." (quotation marks omitted)); see also Gross v. Town of Cicero, Ill., 619 F.3d 697, 702-03 (7th Cir. 2010). Nevertheless, the result is that every argument is undeveloped and, with conclusory assertions aside, Fuchs fails to address the prejudice prong in any of his arguments. See Holm, 326 F.3d at 877; United States v. Lewis, 39 F. App'x 337, 340 (7th Cir. 2002) ("Lewis cannot satisfy Strickland because he does not even attempt to demonstrate prejudice from counsel's untimely filing of pretrial motions. Lewis merely asks this court 'to recognize the devastating consequences' of counsel's waiver of the substantive arguments in his pretrial motions, but does not explain what those consequences are. Nor does he argue that his motions would have been granted if timely, and indeed the district court made plain that it would have denied them."). With that in mind, and out of an abundance of caution, the court will briefly address each of Fuchs' main points.

### 1. Failure to Object to the Original 144-Month Sentence

Fuchs first argues that Sellers was ineffective for failing to object to his original 144-month sentence, which was an upward variance from the advisory guidelines range of 100-125 months, as unreasonable. This argument is based on Fuchs' misunderstanding of the way the advisory guidelines work. Although a sentence within the advisory guidelines range is presumptively reasonable, see Rita v. United States, 551 U.S. 338, 347 (2007), a sentence outside the advisory guidelines range is not presumptively unreasonable, see United States v. Abebe, 651 F.3d 653, 657 (7th Cir. 2011). Indeed, the Seventh Circuit told Fuchs as much in its adjudication of his second appeal. See Fuchs, 458 F. App'x at 553 ("Fuchs also maintains his above-guidelines sentence was necessarily unreasonable. On the contrary, there is no presumption that a sentence outside the guidelines' range is unreasonable." (quotation marks omitted)). The fact that a modest upward variance from the advisory range was imposed does not mean that the sentence was unreasonable. Indeed, following the recalculation, this court imposed a similar modest upward variance and was ultimately affirmed by the Seventh Circuit. See id. Accordingly, a challenge to the reasonableness of the 144-month sentence was neither obvious nor strong enough that Sellers was constitutionally required to raise the issue in addition to the challenge she made to the sentence.

Indeed, even if the performance was deficient, it certainly was not prejudicial. The relief available from challenging the reasonableness of the 144-month sentence would have been a remand for resentencing. Sellers, however, succeeded in getting a remand for resentencing based on the argument challenging the imposition of § 3B1.3. Accordingly, Fuchs already received the relief that raising the reasonableness argument would have provided, and therefore the result of the appeal was not altered by the failure to raise the issue. See Brown, 598 F.3d at 425; see also Jones v. Barnes, 463 U.S. 745, 751-52 (1983) ("Neither Anders nor any other decision of this Court suggests . . . that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points. . . . Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues.").

Fuchs makes two additional arguments concerning his original sentence—that his criminal history score was wrong and that the advisory guidelines range was incorrectly calculated. However, Fuchs provides no explanation as to what error was allegedly made which could have been raised concerning either claim, so the court is unable to address whether the failure to raise these issues was deficient or prejudicial. See Holm, 326 F.3d at 877.

In his reply brief, Fuchs fleshes out his argument concerning his criminal history score. Specifically, he argues that his appellate counsel was ineffective for failing to challenge the inclusion of two prior criminal acts, one which resulted in one criminal history point and another which resulted in three points. Initially, by raising these issues only in the reply brief—and this in spite of the fact that the court granted Fuchs an opportunity to file an amended motion addressing the deficiencies in his original motion—Fuchs has waived these arguments, as the government does not receive an opportunity to respond. See White v. United States, No. 12 C 50272, 2013 WL 1499182, at *3 n.1 (N.D. Ill. Apr. 11, 2013). Even had he not waived them, Fuchs is incorrect—both prior acts and all four points were correctly included—and thus his appellate counsel was not ineffective for failing to raise either issue.

Fuchs challenges the assignment of one point to a misdemeanor charge for giving liquor to a minor. However, U.S.S.G. § 4A1.1(c) includes one point for misdemeanors (up to a total of four points) except where exempted under one of the categories in § 4A1.2(c). Providing liquor to a minor is not one of the excludable misdemeanors,[4] and thus it was correctly assigned one criminal history point and his appellate counsel was not ineffective for failing to raise this issue. Similarly, Fuchs challenges as untimely the three points assigned for a felony conviction arising from deceptive practices which resulted in twenty-one months of incarceration. His release from incarceration was more than ten years prior to his sentencing, and thus he argues it should not have been counted. However, because he was incarcerated for an aggregate of twenty-one months on the deceptive practices charge, the applicable time period was not ten years as Fuchs argues but, rather, fifteen years, § 4A1.2(e)(1). He was released from incarceration on April 5, 1994 and commenced the instant offense conduct on December 20, 2002, less than ten years later. Thus the assignment of three points to the prior sentence was clearly appropriate. Therefore, his appellate counsel was not ineffective for failing to raise that issue, either.

## 2. Jury Issues

Fuchs next complains that Sellers was ineffective for failing to raise two issues concerning the jury pool, namely that (1) the government struck the only black juror from the jury pool by use of a peremptory challenge and (2) the selected jury was not a jury of his peers because they had "law enforcement background" and lacked any knowledge of mortgage brokerage or the industry in general.

As to the first jury-based challenge, Fuchs has not pointed to any portion of the record wherein a black juror was struck based on a peremptory challenge. Additionally, the court's independent review of the transcript of jury selection has not revealed the mention of any black juror

---

[4]The discussion concerning the guidelines in this section is true under both the Guidelines Manual in effect at the time of Fuchs' sentencing and in effect at the time of his criminal behavior.

who was struck by the government. Appellate counsel cannot be ineffective for failing to raise an issue with no basis in the record. See Brown, 598 F.3d at 425 (noting that appellate counsel is only deficient for failure to raise "obvious" issues).

As to the second, the Supreme Court has long held that the Sixth Amendment right to a jury trial does not guarantee a jury with any particular knowledge or one that is representative of a defendant's interests in general. See Holland v. Ill., 493 U.S. 474, 480 (1990) ("The Sixth Amendment requirement of a fair cross section on the venire is a means of assuring, not a representative jury (which the Constitution does not demand), but an impartial one (which it does)."); id. at 483 ("Defendants are not entitled to a jury of any particular composition."). Thus, the fact that the jurors lacked mortgage experience is irrelevant. Other than a conclusory allegation that the jurors had a law enforcement background, Fuchs has not pointed to any particular juror whose experience was problematic. "Moreover, nothing prevents jurors who have characteristics about which Petitioner complains from service on juries." Thomas v. Rednour, No. 11 C 4927, 2013 WL 2251734, at *12 (N.D. Ill. May 22, 2013). Each juror was subject to an extensive voir dire, and each agreed that they could judge the case impartially. Fuchs has pointed to nothing in the record which would have made it obvious to his appellate counsel that a worthy argument existed to object to his trial on this basis.

### 3. Circuit Rule 36

Fuchs next argues that his appellate counsel was ineffective for failing to ask the Seventh Circuit to reassign his case on remand to a different judge on account of Circuit Rule 36. Circuit Rule 36 states:

> Whenever a case tried in a district court is remanded by this court for a new trial, it shall be reassigned by the district court for trial before a judge other than the judge who heard the prior trial unless the remand order directs or all parties request that the same judge retry the case. In appeals which are not subject to this rule by its terms, this court may nevertheless direct in its opinion or order that this rule shall apply on remand.

7th Cir. R. 36. By its terms, the rule does not apply automatically—the case was not remanded for a new trial, but for resentencing. Of course, the last sentence reserves the right to order the case reassigned following any appeal, but the Seventh Circuit typically only does so where the original sentencing judge has engaged in "inflammatory, provocative, or disparaging" behavior or demonstrated that he "would be unable to follow [the Seventh Circuit's] instructions on remand." United States v. Tovar-Pina, 713 F.3d 1143, 1148 (7th Cir. 2013). Fuchs has not identified anything in the record from which his appellate counsel could have argued either inflammatory behavior or the inability to follow instructions on remand. Accordingly, it would not have been obvious to Sellers that a deserving argument existed for reassignment on remand, and she was not ineffective for failing to raise the issue.

### 4. Sentencing Disparity

Fuchs next claims that his appellate counsel was ineffective for failing to raise the disparity in sentencing between himself and others who have committed similar crimes. Fuchs, however, only

conclusorily states "[t]here are too many cases decided that have sentences way below that of Fuchs'" without identifying any such cases. One of the § 3553(a) factors which a sentencing judge is required to consider is the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). However, since Fuchs has provided no cases which his appellate counsel allegedly missed which would have shown such a disparity, he has failed to carry his burden to show that her failure to raise this issue was deficient or prejudicial.

In his reply brief, Fuchs has attached a list of cases which he argues shows the sentencing disparity his appellate attorney should have raised. Because this material is raised for the first time in a reply brief, without the government having an opportunity to respond, the argument based on it is waived. See White, 2013 WL 1499182, at *3 n.1. Waiver aside, he cites: United States v. Love, 680 F.3d 994 (7th Cir. 2012)[5]; United States v. Green, 592 F.3d 1057 (9th Cir. 2010); United States v. Adcock, 534 F.3d 635 (7th Cir. 2008); United States v. Segal, 495 F.3d 826 (7th Cir. 2007); United States v. Van Waeyenberghe, 481 F.3d 951 (7th Cir. 2007); United States v. Frykholm, 362 F.3d 413 (7th Cir. 2004); United States v. Lee, 232 F.3d 556 (7th Cir. 2000); and McCloud v. United States, 837 F. Supp. 2d 778 (N.D. Ill. 2011)[6] to support his argument that his sentence was disparate when compared with those cases, all of which contain mail or wire fraud. As previously mentioned, when sentencing, the law requires a federal judge to account for "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). However, "[a]s the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances. And of course sentencing disparities become a point of concern only when the sentences being compared involve similar conduct and defendants with similar records." United States v. Brown, 732 F.3d 781, 788 (7th Cir. 2013). With that standard in mind, those cited cases do not show that the disparate sentence argument was so meritorious Sellers was ineffective for failing to raise it. Most of the cases, although they involved wire or mail fraud, did not involve conduct similar to the conduct in Fuchs' case. Id. at 788-89 ("Brown compares his above-guidelines sentence to other cases involving within-guidelines sentences for wire- and mail-fraud convictions. But he does not explain how the cases involve conduct similar to his conduct here; a different sentence for the same charge does not alone raise any concern about unwarranted disparities under § 3553(b)(6)."); e.g. Green, 592 F.3d at 1060-62 (defendant made false representations to receive school grants under a federal program); Adcock, 534 F.3d at 638 (defendant made false representations to get a government contract); Segal, 495 F.3d at 830 (defendant misused a trust account to shelter certain assets from taxation); Van Waeyenberghe, 481 F.3d at 954-55 (defendant bilked investors out of money through misrepresentations); Frykholm, 362 F.3d at 414 (defendant

---

[5]The citation provided by Fuchs does not lead, as the citation suggests, to a Seventh Circuit case, but rather to the adjudication of certain motions by the district court. The court has supplied the Seventh Circuit citation, in conformity with what it appears Fuchs was attempting to cite.

[6]Again, Fuchs provides the incorrect citation in his table. The court has supplied the correct citation to McCloud, which is the only opinion which appears to support Fuchs' argument concerning the sentence. The Seventh Circuit (which Fuchs indicates he is trying to cite to) never ruled on McCloud's arguments, as she voluntarily dismissed her appeal to that Court. See McCloud, 837 F. Supp. 2d at 781.

ran a Ponzi investment scheme). In the remaining cases, <u>Love</u>, <u>Green</u>, <u>Lee</u>, and <u>McCloud</u>, there is no indication that the defendants in those cases had similar records to Fuchs' extensive history of criminal behavior. Additionally, only in <u>Green</u> did the defendant go to trial, the other three pled guilty and therefore mitigation for acceptance of responsibility for their acts would have been available. Nevertheless, it is clear that the cases offered by Fuchs do not paint such a sufficiently obvious and compelling case for disparate sentencing that his attorney was ineffective for not raising the issue.

Furthermore, Fuchs has failed to show prejudice. Sellers succeeded in convincing the Seventh Circuit to give him a new sentencing, which is the relief which would have been available had she raised this issue and won it. Thus, because Sellers secured the relief raising this argument could have produced, that is resentencing, there was no prejudice from her failure to raise the issue. <u>See</u> <u>Jones</u>, 463 U.S. at 751-52; <u>Brown</u>, 598 F.3d at 425.

### 5. Loss and Restitution

Fuchs also complains that his appellate counsel failed to object to the trial court's loss and restitution calculation. However, Fuchs fails to set out any argument concerning how either figure was incorrect. Indeed, this entire argument is one sentence long: "If counsel would have argued the losses and restitution correctly, Fuchs would have had a major reduction in his sentence and restitution." Again, based on this perfunctory statement, Fuchs has failed to carry his burden to show that his appellate counsel's performance was either deficient or prejudicial.

In his reply, Fuchs finally explains what he means in that sentence, but the explanation comes long after the government had responded and is thus waived. <u>See</u> <u>White</u>, 2013 WL 1499182, at *3 n.1. Even if Fuchs had not waived the contention, it does not entitle him to relief. Fuchs argues that various lending agents "rehearsed" some of their testimony with the government because it was not consistent with some of the loan documents provided by the government. In particular, he notes that many of the lenders' agents admitted that the loans had been resold on the secondary mortgage market (although some of those same agents testified that the lenders were required to repurchase some of the mortgages on account of the fraud) and thus the loss and restitution calculations are invalid because the lenders did not suffer the losses. Initially, this argument, even if true, does not rebut the loss calculations. Fuchs caused the losses to the ultimate note holder by getting loans approved by lenders through his fraudulent behavior, regardless of the identity of that note holder. His argument would instead show that the restitution is targeted to the wrong victim, that is, that this court ordered restitution to the original lender rather than the holder of the note at the time for foreclosure. Fuchs has not established what interest he has in the resolution of the issue—he is going to have to pay the same amount of restitution, regardless to whom it is ultimately paid. Additionally, although the restitution statute, 18 U.S.C. § 3664, does entitle each victim to an order directing restitution to him of his full loss, "[t]he criminal has no rights under [that] provision." <u>United States</u> <u>v. Grimes</u>, 173 F.3d 634, 639 (7th Cir. 1999). "If the district judge violated [§ 3664] by failing to name some of the victims in the order of restitution, he has wronged the victims, not [the defendant]." <u>Id.</u>

Additionally, the Seventh Circuit has rejected that a habeas petitioner can satisfy the "in custody" requirement to challenge a restitution order on habeas review. <u>See</u> <u>Virsnieks v. Smith</u>, 521

F.3d 707, 718 (7th Cir. 2008) ("[C]ourts have held that orders of restitution, fines and the revocation of medical and driver's licenses do not satisfy the "in custody" requirement."). Accordingly, because any failure on Sellers' part to challenge the restitution order did not result in Fuchs being placed in custody, that challenge is outside the purview of § 2255, and the fact that the issue is raised as ineffective assistance or that there may be other cognizable § 2255 grounds in Fuchs' petition does not alter the result. See United States v. Trimble, ___ F. Supp. 2d ____, No. 06-658-05, 2014 WL 647119, *3 (E.D. Pa. Feb. 18, 2014) ("[C]ourts of appeals to consider the issue have held that a claim for relief from a restitution order cannot be brought in a habeas corpus petition, whether or not the petition also contains cognizable claims for release from custody. Permitting attacks on restitution orders so long as such attacks are included in petitions that also challenge a custodial sentence would encourage petitioners to bring frivolous claims against sentences of incarceration when, in fact, the only colorable claims available are against restitution orders. . . . For the same reason, a challenge to a restitution order brought under the guise of an ineffective assistance of counsel claim is also not cognizable in a habeas petition because it does not seek release from custody." (alteration, citations, and quotation marks omitted)).

In any event, Fuchs has failed to show prejudice. Sellers succeeded in convincing the Seventh Circuit to give him a new sentencing, and he, in fact, received a resentencing hearing and an opportunity (which he took) to raise arguments concerning his sentence and restitution on remand.[7] Thus, because Sellers secured the relief raising this argument could have produced, that is a resentencing, there was no prejudice from her failure to raise the issue. See Jones, 463 U.S. at 751-52; Brown, 598 F.3d at 425.

### 6. Hearsay

Fuchs next identifies a hearsay argument that he maintains Sellers should have raised to the Seventh Circuit. Specifically, Fuchs argues that his appellate counsel should have raised objections to the testimony about "telephone calls they heard." However, Fuchs fails to identify what telephone calls he is talking about and the pronoun "they" has no antecedent (except the Seventh Circuit Court of Appeals, which certainly cannot be to whom Fuchs refers), so that the court is unable to discern which witness or witnesses Fuchs is referencing. The court is under no obligation to search through the record on Fuchs' behalf in order to flesh out his arguments. See Holm, 326 F.3d at 877; see also Gross, 619 F.3d at 702-03. However, a brief review of Fuchs' reply suggests that Fuchs is referencing testimony from assorted witnesses either testifying to telephone conversations with Fuchs himself or to overhearing Fuchs' half of a telephone conversation while he was on the line with a third person. Neither of these are hearsay, as Fuchs was the government's opposing party at the trial. See Fed. R. Evid. 801(c)(2); United States v. Wills, 346 F.3d 476, 489 (4th Cir. 2003) (holding that statements made during telephone conversations by a defendant are admissible under the party opponent exception to the hearsay rules). Thus, appellate counsel was not deficient for failing to raise this argument.

---

[7]Indeed, the court itself raised the issue of restitution at resentencing and addressed Fuchs directly concerning the issue, and he did not raise any issue with the amount or how that amount was calculated.

### 7. Testimony of Cindy Stewart

Fuchs next argues that Sellers should have attacked the credibility of Cindy Stewart, particularly concerning her memory loss. On direct examination, the government elicited from Ms. Stewart that she suffers from a seizure-causing disorder which causes some problems with her memory. She admitted on direct examination that the condition is degenerative with age and that her memory was not as good as it was even a year before her trial testimony. Stewart was cross examined at some length concerning the substance of her testimony, but Fuchs' trial attorney did not delve back into her seizure testimony. It is unclear what Fuchs believes Sellers should have raised, whether she was ineffective for failing to raise an ineffectiveness argument about his trial attorney's failure to impeach her, that Stewart's testimony was so incredible the jury could not rely on it, or something else entirely. Regardless, the court can see no prejudice to Fuchs based on Sellers' failure to raise any such argument. "Deciding what questions to ask is a matter of trial strategy to which counsel is entitled deference," United States ex rel. Holmes v. Chandler, 12 C. 4273, 2013 WL 5737347, at *3 (N.D. Ill. Oct. 22, 2013), and, put simply, the jury already had before it the information about Stewart's memory loss. The failure to stress the point to Fuchs' personal satisfaction does not rise to a constitutional problem, and, in any event, the argument is not so meritorious as to make Sellers' performance deficient for failure to recognize and raise the issue.

### 8. The Victims' Behavior

Fuchs next argues that Sellers should have argued to the Seventh Circuit that the lenders whom he defrauded were at fault because they abandoned meaningful underwriting standards and did not do their own due diligence. However, Fuchs does not explain how raising this argument could have helped him. The fact that lenders were not protecting themselves as thoroughly as they could does not relieve him of culpability for his own fraudulent behavior. See United States v. Coffman, 94 F.3d 330, 333 (7th Cir. 1996). Accordingly, this argument was not so worthwhile that appellate counsel was deficient for failing to raise it.

### 9. Other Witness Issues

Fuchs finally argues that Sellers missed two more issues revolving around the witnesses at trial: that she should (1) have "found conflicting statements" between the government's fact witnesses and (2) argued that the witnesses were "coached on what to say." As to the first, Fuchs has failed to identify any such conflicting statements Sellers could have found in the record. Even presuming there were some (Fuchs provides a list of allegedly conflicting statements for the first time in his reply brief), conflicting statements from different witnesses is a credibility issue which is reserved to the jury, subject to certain extreme exceptions. See United States v. Johnson, 729 F.3d 710, 715 (7th Cir. 2013) (noting that to "the extent the jury credited" a witness' testimony, the Seventh Circuit "will only set that credibility determination aside if the testimony is exceedingly improbable" (quotation marks omitted)). The jury was instructed to consider consistency and all of the evidence of the trial in making its determination. (See Trial Tr. 1638, 1641.) Fuchs has not established that any conflicting statements were so incredible that no reasonable factfinder could credit the government's case, or that an argument based on such conflicting statements was so compelling that his appellate counsel should have recognized it. Thus, his appellate counsel was not deficient for failing to raise the issue to the Seventh Circuit.

As to the claim of coaching, this argument, too, is one sentence long and does not identify which witnesses or what testimony was allegedly coached. Fuchs points to nothing in the record from which appellate counsel could have formulated an argument about coaching. In his reply brief, Fuchs reiterates his claims that various witnesses were coached, but fails to explain how or why the alleged inconsistencies in their testimony lead to the conclusion that the witnesses were coached. Accordingly, appellate counsel was not deficient for not raising that issue, either.

In summary, then, Sellers was not deficient for failing to raise any of the issues mentioned by Fuchs in his motion, and the motion is denied as to the third ground.

### D. Ineffective Assistance of Trial Counsel

As his fourth ground for relief, Fuchs argues that his trial counsel, David Caulk, was ineffective on a number of grounds. This series of arguments, however, like those against his appellate counsel, are undeveloped and perfunctory, all lacking any citation to the record or other factual support. See Holm, 326 F.3d at 877; see also Gross, 619 F.3d at 702-03. Nevertheless, again out of an abundance of caution to Fuchs, the court will briefly address each of his arguments.

As with his arguments against appellate counsel, Fuchs must overcome a heavy burden to prove that his attorney was constitutionally deficient pursuant to the familiar Strickland test. Shell v. United States, 448 F.3d 951, 955 (7th Cir. 2006). Specifically, Fuchs must demonstrate (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) prejudice. Strickland v. Washington, 466 U.S. 668, 688 (1984). To satisfy the first prong, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. However, strategic choices on the part of counsel "are virtually unchallengeable." Id. Accordingly, a district court's "analysis begins with the strong presumption that the defendant's attorney rendered adequate representation of his client." United States v. Meyer, 234 F.3d 319, 325 (7th Cir. 2000) (quotation marks omitted). To satisfy the second prong, Fuchs must show that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Fuchs' main contention concerning his trial counsel, and the one that is repeated throughout his motion, is that he was in "cahoots" with the government's attorneys in exchange for a job at the Rockford office of the Federal Defender Program, and therefore intentionally provided inadequate assistance. However, Fuchs' has provided no citation to the record that would support a finding that Caulk received or was promised a position with the Federal Defender Program in exchange for poor performance. Indeed, Fuchs does not provide an affidavit, or other evidence, which would justify even holding a hearing on the issue. See Kafo v. United States, 467 F.3d 1063, 1670 (7th Cir. 2006) ("[I]t is the rule of this Court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit that shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions. We have referred to the affidavit as a threshold requirement; its absence precludes the necessity of a hearing."). In his reply brief, Fuchs sets out the basis for his belief concerning Caulk's promise of future employment came from a single line in a document filed by a different attorney which simply listed Caulk as a federal defender rather than retained counsel. Since there is no evidence that Caulk had a conflict of interest on account of

actual or promised employment with the Federal Defender Program, this argument fails.[8]  Moreover, it is counterintuitive to conclude that providing substandard legal representation would somehow enhance Caulk's prospects for becoming a Federal Defender.  Having addressed the main thrust of Fuchs' ineffective assistance argument, the court will briefly address each of Fuchs' other arguments concerning Caulk's performance.

### 1. Hearsay

Fuchs makes the same hearsay arguments against Caulk as he did <u>supra</u> against Sellers concerning telephone calls.  The arguments fail for the same reason, Fuchs was a party opponent.

### 2. Failure to Interview or Investigate Witnesses

Fuchs next argues that Caulk failed to interview prosecution witnesses before trial or investigate additional exculpatory witnesses.  However, Fuchs fails to identify what witnesses Caulk failed to interview or investigate, what about that failure was deficient, or how the failure prejudiced his defense.  <u>See United States ex rel. Partee v. Lane</u>, 926 F.2d 694, 701 (7th Cir. 1991) ("[A] habeas court cannot even begin to apply <u>Strickland</u>'s standards to a [failure to investigate or elicit testimony] claim unless and until the petitioner makes a specific, affirmative showing as to what the missing evidence or testimony would have been.  Without such a showing, it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." (citation and quotation marks omitted)); <u>accord</u> <u>United States ex rel. Phillips v. Firkus</u>, No. 06 C 4256, 2007 WL 1438287, *1 n.2 (N.D. Ill. May 10, 2007).  Accordingly, Fuchs has not met his burden to show ineffective assistance as to this ground.

### 3. Incomplete Documents

Fuchs next complains that his trial counsel failed to object to documents from the lender victims which he claims were incomplete.  However, Fuchs fails to identify what documents, in what way they were incomplete, or how their allegedly incomplete nature prejudiced his trial.  In his reply brief, he provides somewhat more detail, alleging that there were underwriting documents and notes from various individuals missing from the loan files offered at trial.  Nevertheless, even in his untimely explanation, Fuchs fails to explain which loan documents were incomplete, how these missing notes were necessary to the jury's understanding of the loan documents, how the missing documents were important, or how the absence of the documents prejudiced his defense.  Thus, he has failed to meet his burden to show ineffective assistance on this ground.

### 4. Lenders as Victims and Loss/Restitution Calculations

Fuchs' next two arguments are related: that the lenders, identified by the government as the victims in this case, were not victims and that the loss and restitution calculations were incorrect. Both arguments are premised on the claim that the lenders resold their loans as mortgage-backed

---

[8]Although not a part of the record, the court notes that Attorney Caulk does not work and has never worked with the Federal Defender's office in the Northern District of Illinois at any time.  A quick scan of the electronic filing system confirms he has never represented a federal criminal defendant on behalf of the Federal Defender's before any federal judge in the Northern District.

securities after the loans were generated, and therefore they were not the victims and they had no losses. As the government points out, though, Fuchs' allegations (unsupported by citation to the record or any newly offered evidence) are contradicted by the evidence at trial, wherein the lender representatives testified that they were forced to repurchase some of the loans generated by Fuchs' fraudulent behavior after the investors discovered the fraud. Nevertheless, Fuchs has not pointed to any place in the record nor provided any evidence which would show that the loss or restitution calculations were inaccurate, or that his counsel—who objected to both in various ways—was deficient for failing to raise additional arguments on this point or that any such deficiency would have resulted in a lower loss or restitution amount.

It is not until his reply that Fuchs finally identifies some of the testimony he claims shows that the loss and restitution amounts were incorrectly calculated, therefore his argument based on that testimony is also waived. See White, 2013 WL 1499182, at *3 n.1 (noting that raising arguments for the first time in a reply brief results in waiver). Regardless of waiver, this claim against Caulk fails for the same reason it failed against Sellers supra. Initially, restitution challenges are not cognizable in § 2255 review. See Virsnieks, 521 F.3d at 718. Additionally, the fact that the mortgages may have been resold does not affect the loss or restitution calculations, just to whom restitution is owed, and Fuchs has not demonstrated that he has an interest in the identity of the individual to whom the restitution will be paid. Furthermore, he disregards some of the lenders' agents' testimony which set out the loss amounts by claim that their testimony was "not correct," "not entirely true," or "coached" based on nothing but his own conclusions. The remainder of the argument concerns Fuchs' disagreement with the actions of the lenders vis'a'vis the loans, namely that they had inadequate underwriting procedures or that they were "inducing the fraud" themselves. None of this testimony, nor Fuchs' disagreement with much of it, suggests that the loan or restitution calculations were incorrect, such that failure to challenge them beyond what his trial attorney already raised was ineffective.

### 5. Testimony of Abby Stewart

Fuchs next complains that Caulk failed to object to perjured testimony by Abby Stewart, whom he identifies as the government's "star witness." However, Fuchs failed to identify any particular testimony from Stewart, why it was perjury, and how or why his attorney would have been aware of that perjury in order to raise the issue. Furthermore, Fuchs failed to explain how Stewart's allegedly perjured testimony affected the outcome of his trial, except to call her the government's "star witness." Thus, since Fuchs has failed to meet his burden to show that his counsel's performance was somehow deficient or that any deficiency prejudiced his trial, he cannot show ineffective assistance based on this ground.

In his reply brief, Fuchs again provides new argument on this issue. Once again, since the new arguments were raised in the reply brief, they are waived. See id. Even if they were not, the additional arguments do not help Fuchs. Fuchs identifies certain grand jury testimony from Stewart which he claims is in tension with Stewart's trial testimony. However, Fuchs does not identify what portions of her trial testimony are in tension with her grand jury testimony, nor does he explain how the outcome of his trial would have been different had his attorney successfully objected to that testimony or impeached her on the basis of her inconsistent statements. The court notes that Caulk impeached Stewart at some length, both drawing out her inability to remember certain details and

then attacking her credibility based on the immunity she received in return for her testimony. Without identifying what portions of her testimony may have been susceptible to further impeachment on account of her alleged perjury, Fuchs has not met his burden to show ineffective assistance. See Partee, 926 F.2d at 701.

### 6. Failure to Move for Recusal

Fuchs also argues that his attorney was ineffective for failing to move for recusal of this court on account of a brief encounter the undersigned here had with one of Fuchs' codefendants long before the events of his case. The court disclosed that the undersigned recalled meeting Frank Anast, one of Fuchs' codefendants and a witness for the government at trial, once at a mutual friend's business and that Anast had been to the undersigned's home to repair a home computer as part of Anast's small computer repair business. Despite being aware of this fact, Caulk did not move to disqualify the undersigned from the case, and Fuchs argues that this failure was ineffective in violation of the Sixth Amendment.

Recusal in this context is controlled by 28 U.S.C. § 455, which has two potentially relevant sections. First, a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." § 455(a). Second, a judge "shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." § 455(b)(1). Nevertheless, simple "acquittance with [a] witness[] . . . does not ordinarily require recusal." United States v. Peel, 06-CR-30049-DRH, 2006 WL 1388864, at *3 (S.D. Ill. May 18, 2006) (quotation marks omitted). A brief social meeting coupled with a single unrelated arms-length commercial transaction is not sufficient to cause a reasonable individual to question the impartiality of a judge. Id. ("The mere fact that a judge knows any attorney, witness or litigant is insufficient to warrant recusal."). Furthermore, Fuchs has not identified any way in which a defect in the undersigned's impartiality concerning Anast impacted his trial. Although Anast testified, Fuchs has not identified any evidentiary rulings this court made during that testimony which favored Anast's testimony, or any indication given to the jury—who were the ones ultimately responsible for accepting or rejecting Anast's testimony—of the undersigned's alleged (and, the court hastens to add, nonexistent) bias in favor of Anast.

The closest issue raised by Fuchs is, instead, that this court "assisted" Abby Stewart in her testimony. Fuchs has not explained what he means by his allegations that this court "assisted" Stewart in her testimony, nor has he explained why an alleged bias in favor of Anast would cause such assistance. Setting aside those problems, however, a review of the transcript discloses no such "assistance." During her testimony, the court considered various objections to her testimony, and made rulings in both parties' favor at different times, none of which Fuchs specifically challenges. Additionally, the court admonished Stewart to keep her volume up at an audible level. There is nothing in the transcript to suggest that the court provided any substantive testimony to Stewart or made any attempt to bolster her credibility to the jury.

For all the foregoing reasons, Caulk was not ineffective for failing to move to disqualify the undersigned.

## 7. Plea Bargaining

Fuchs next argues that his attorney was ineffective for failing to explain the possibility of an upward departure from the advisory guidelines range to him, which resulted in him going to trial rather than taking a plea deal which would have accrued to his net benefit.

"During plea negotiations defendants are entitled to the effective assistance of competent counsel." Lafler v. Cooper, 566 U.S. ___,132 S. Ct. 1376, 1384 (2012) (quotation marks omitted); see also Missouri v. Frye, 566 U.S. ___, 132 S. Ct. 1339, 1405 (2012) ("Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings . . . includ[ing] . . . the entry of a guilty plea." (citations and quotation marks omitted)). Fuchs must still meet the familiar Strickland test and show that (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694. Here, even presuming Caulk failed to explain that the potential guidelines range was advisory and that doing so was deficient performance, Fuchs has failed to set out that there is a reasonable probability that, but for that error, his proceeding would have been different.

First, a guilty plea would not have affected this court's authority to set the sentence, including departing upwards from the advisory guidelines range, unless the government offered a Rule 11(C)(1)(c) plea agreement. There is no evidence, or even an allegation, in this case that such a plea agreement was offered, or even contemplated, by the government. Second, before a guilty plea may be accepted, a defendant must actually acknowledge commission of the acts which constitute the crime and set out, or acquiesce in the government's setting out, of a factual basis for the guilty plea. Fuchs has maintained his innocence, even in the face of a mountain of contrary evidence, up to and including in the current motion to set aside his sentence. It is unlikely that his behavior would have changed had he been informed that the court could vary upward from the advisory guidelines range by twelve months. Finally, Fuchs was already willing to forego the three-level reduction for acceptance of responsibility, see USSG § 3E1.1, by refusing to plead guilty in this case, and instead go to trial and testify, thereby risking a two-level enhancement for obstruction of justice, see USSG § 3C1.1, if the court determined he testified untruthfully. That five-level difference resulted in a range at resentencing of 84-105 months rather than a 51-63 months range, which would have been Fuchs' sentencing range had he pled guilty and accepted responsibility. As that potential 30-40 month difference in the advisory guidelines calculation was insufficient to convince Fuchs to plead guilty, then learning that 12 months could be added on by an upward variance certainly would not have been sufficient to change his mind. In sum, then, even if Caulk did fail to inform Fuchs of the potential for an upward variance and even if that failure was deficient, he still cannot meet the Strickland standard.

## 8. Failure to Contest Supplemental Presentence Report

Fuchs' last argument regarding Caulk's assistance concerns a supplemental report to the presentence report offered to the court prior to Fuchs' original sentencing. In the report, the court's attention was brought to the claims of Kathleen Klotz, who alleged in a state criminal complaint against Fuchs that he had victimized her in a "senior citizen foreclosure scam" which bilked her out

of her home and some of the fixtures therein during the pendency of Fuchs' federal charges, although the report also noted that Winnebago County had declined to prosecute Fuchs for his actions. At sentencing, Caulk did not object to the consideration of the material in the report, and the court mentioned Klotz' story as one example of Fuchs' ongoing criminal behavior even after the FBI raid on his office and the indictment in the instant case. Fuchs argues that Caulk was ineffective for failing to challenge the Klotz narrative, as he claims that he did nothing wrong vis'a'vis Klotz, and that any wrongdoing in the situation was caused by her failure to disclose her home's septic problem.

Fuchs has failed to show that Caulk's performance in this regard was deficient. Initially, Fuchs has not indicated that he ever told Caulk that the narrative was allegedly inaccurate. Presuming he did, Fuchs has not set out any evidence that the narrative was inaccurate, except for his unverified argument alleging as much and blaming Klotz instead. Argument, without any affidavit or other evidentiary support, is not enough to get a hearing on the issue, much less to show deficiency. See Kafo, 467 F.3d at 1670. Even if it were, Fuchs has also failed to show the necessary prejudice. Although the court mentioned the Klotz narrative in its discussion of the imposition of the sentence, including the upward variance from the advisory guidelines range, the court also mentioned many other aggravating factors which would justify this court's upward variance. Finally, the government, Fuchs' attorney, and Fuchs himself all agreed that it was appropriate for the court to use that material for the purposes of sentencing. (Sentencing Tr. Vol. I, 16.); see Peretz v. United States, 501 U.S. 923, 936 (1991) ("The most basic rights of criminal defendants are . . . subject to waiver."). Thus, Caulk's failure to challenge the supplemental report which included the Klotz narrative was not ineffective.

### E. Prosecutorial Misconduct

As his fifth ground for relief, Fuchs argues that the prosecution engaged in various kinds of misconduct. Again, many of these arguments are raised only perfunctorily, rarely more than a single sentence long once hyperbole has been excised. See Holm, 326 F.3d at 877. Nevertheless, the court will continue addressing each of Fuchs' main contentions.

### 1. Failure to Disclose Cindy Stewart's Mental Condition

Fuchs first argues that the government failed to disclose Cindy Stewart's "mental condition," presumably her memory loss. Where the government fails to disclose exculpatory evidence, it "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). "To succeed on a Brady claim, [the defendant] bears the burden of proving that the evidence [was] (1) favorable, (2) suppressed, and (3) material to the defense." United States v. Walker, ___ F.3d _____, No. 13-2145, 2014 WL 1193373, at *4 (7th Cir. Mar. 25, 2014) (quotation marks omitted). As an initial matter, the disclosed materials sent by the government to Fuchs included Cindy Stewart's memory loss and her grand jury testimony. Furthermore, at trial, the prosecution elicited from Cindy Stewart testimony concerning her memory loss, which the jury heard. Thus, even if it had suppressed the fact of her memory loss (which the record does not bear out), that suppression would not have been material because the jury heard the evidence and got a chance to evaluate it anyway. See United States v. Morales, ___ F.3d ____, Nos. 12-3558, 13-1103, 2014 WL 1203140, at *5 (7th Cir. Mar. 25, 2014) ("[E]vidence is material for Brady purposes only if there is a reasonable probability that its disclosure to the defense would have changed the result of the trial."

17

(quotation marks omitted)).

## 2. Failure to Disclose Evidence from the Talan or Boyle Cases

Fuchs next argues that the government engaged in misconduct by failing to provide Fuchs unidentified evidence from its cases against Ray Talan or James Boyle which he alleges would prove his innocence. However, the court is unable to determine whether the evidence was material or favorable, as Fuchs has failed to identify what evidence was allegedly suppressed. See United States v. Shirazi, No. 03 C 5328, 2006 WL 1155945, at *6 (N.D. Ill. May 1, 2006) ("Shirazi does not identify what facts he is referring to [in his Brady argument], nor how such facts were material or even relevant to his case. Shirazi's claim for ineffective assistance of counsel arising from Brady violations fails for an almost complete lack of evidence and support.").

In his reply brief, Fuchs makes an attempt to identify the materials from the Talan prosecution he feels were suppressed. However, these documents are still not identified with any specificity, just with general description, and they are not attached or included for the court to review. Additionally, their materiality remains unaddressed. Most critically, however, it is clear based on the government's disclosure that it provided the Talan materials to Fuchs long before trial. Fuchs has not provided any evidence, affidavit or otherwise, to rebut the government's disclosure letter. See Kafo, 467 F.3d at 1670.

## 3. Failure to Correct Abby Stewart's Perjured Testimony

Fuchs next argues that the prosecution engaged in misconduct by failing to correct Abby Stewart's testimony, which was, according to Fuchs, perjured. "When the government obtains a conviction through the knowing use of false testimony, it violates a defendant's due process rights." United States v. Freeman, 650 F.3d 673, 678 (7th Cir. 2011). "To obtain a new trial, the defendant must establish: (1) that there was false testimony; (2) that the government knew or should have known it was false; and (3) that there is a likelihood that the false testimony affected the judgment of the jury." Id. Fuchs has failed to meet any of those requirements: he has not shown that there was false testimony (indeed, he even failed to identify the testimony from Abby Stewart which was allegedly perjured), he has not shown that the government knew or should have known about any such false testimony, and he has not shown that there is a reasonable likelihood that the jury would have reached a different conclusion in the absence of any such testimony.

In his reply brief, Fuchs finally identifies some of the testimony from Abby Stewart which he considers to have been perjured. However, because it was raised for the first time in the reply brief, it is waived. See White, 2013 WL 1499182, at *3 n.1. Looking past the waiver, as mentioned supra in the section dealing with his ineffective assistance argument based on Abby Stewart's testimony, Fuchs identifies certain grand jury testimony from Stewart which he claims, without explanation, is in tension with Stewart's trial testimony. However, Fuchs does not identify what portions of her trial testimony are in tension with that grand jury testimony, nor does he explain how the outcome of his trial would have been different had Abby Stewart not given the unidentified perjured trial testimony. In short, then, even including the additional information from the reply brief, Fuchs has failed to show that the government committed any misconduct with respect to Abby Stewart's testimony.

#### 4. Failure to Disclose Tami Carnes' Bias

Fuchs next argues that the prosecution engaged in misconduct where it failed to disclose the fact that Tami Carnes, one of the witnesses who testified against him at trial from one of the lenders, was "trying or was almost hired to a position with the FDIC" and would thus be biased against him (or, perhaps more accurately, in favor of the government). Fuchs does not explain how this argument is cognizable in a motion pursuant to § 2255, but the court surmises that Fuchs is arguing, again, under the Brady standard set out supra.

First, Fuchs has not provided any evidence that Carnes applied with, or was hired by, the FDIC at or near the time of his trial. Even if he had, he has not provided anything which would suggest the government was aware of that fact at the time of his trial. See Walker, 2014 WL 1193373, at *4 (holding that, to prove suppression in the first place, a defendant must show "that the government or any actors assisting the government in its investigation had any access to or knowledge of the suppressed evidence"). Finally, it is difficult to understand how the prospect of a job with the FDIC would affect Carnes' testimony at trial. Accordingly, Fuchs has not met his burden to show that the government engaged in any misconduct concerning Carnes' alleged bias.

#### 5. Creation and Submission of False Documentary Evidence

Fuchs next argues that the government violated his due process rights where it submitted documentary evidence with false information. Specifically, Fuchs argues that evidence concerning the loss amounts offered by the government was falsified. He appears to largely base this argument, although it is not entirely clear, on the same loss arguments discussed supra—the resale of the loans on the secondary mortgage market to investors means that the loss calculations were incorrect. In this case, though, he also adds to his argument that some of the lenders' agents testified that the original lender was now out of business or no longer lending. This argument fails for the same reason it failed supra, neither the resale nor the corporate failure of the original lenders changes the ultimate loss amounts, it simply changes the specific identities of the victims of Fuchs' fraud. Furthermore, Fuchs has not shown that the government knowingly presented false information to the jury, at most he has shown that some of the documentary evidence was inaccurate where it listed the name of the victim. Additionally, Fuchs has not shown that the name of the victim is material, he caused the losses to whomever owned the note at the time of foreclosure, the fact that the identity of the victim may have been misstated on the government's documents was not material to his guilt or innocence. Finally, and most critically, the fact that the loans were resold, or that some of the lenders were no longer in business or no longer lending, was testified to by their various agents, so the jury and the court were aware of those facts. In context, then, although Fuchs claims that the documents which showed the original lenders' losses were inaccurate (and even presuming that is true), the government did not offer false testimony in that it showed that many of the original lenders were not the immediate owners of the notes at the time of foreclosure. Accordingly, Fuchs has failed to meet his burden to show the government engaged in misconduct.

#### 6. Misconduct by Offering Impermissible Hearsay

Fuchs next argues that the government committed misconduct by offering inadmissible hearsay evidence at trial, specifically Fuchs' side of telephone conversations overheard by various witnesses. As a general rule, "[i]t is well-settled that defendants must argue evidentiary issues only

on direct appeal and not in a section 2255 motion." <u>United States v. Rodriguez-Andrade</u>, No. 95 C 6187, 92 CR677, 1997 WL 6267640, at *1 (N.D. Ill. Oct. 6, 1997); <u>see also</u> <u>United States v. Curry</u>, 2003 WL 21947106, at *4 (N.D. Ill. Aug. 13, 2003) ("Evidentiary issues are rarely a basis for § 2255 relief . . . ."). Fuchs has not explained how his hearsay argument, or his tenuous rewriting of a hearsay argument as a prosecutorial misconduct argument, is cognizable on § 2255 review. Even presuming it is, however, the court has already explained <u>supra</u> why the purported hearsay of which he complains was not hearsay, as he was a party opponent, and it was therefore admissible. Accordingly, Fuchs has failed to meet his burden to receive the extraordinary remedy of § 2255 relief.

### F. Misconduct by This Court

Fuchs next that this court engaged in various form of misconduct. As with his previous arguments, the allegations are perfunctory and undeveloped. <u>See</u> <u>Holm</u>, 326 F.3d at 877. Nevertheless, the court will address each of his main contentions.

### 1. Failure to Recuse

Fuchs first argues that this court erred by failing to recuse itself due to its acquaintance with a codefendant and witness, Frank Anast. However, as explained <u>supra</u>, the court was under no obligation to recuse itself in this circumstance, and Fuchs has not explained how the failure to do so prejudiced his trial.

### 2. The Court "Helped" Abby Stewart and Allowed her to Commit Perjury

Fuchs next argues that this court assisted Abby Stewart in her testimony and allowed her to give perjured testimony. The court has already explained <u>supra</u> that there is nothing in the record which supports Fuchs' claim that this court assisted Abby Stewart in giving her testimony. Additionally, as also explained <u>supra</u>, Fuchs has not shown that Abby Stewart committed any perjury, and certainly has not shown that this court was aware of any such perjury at the time she gave it (as the court is not typically privy to pretrial discovery and was not in this case).

### 3. Leading Questions

Fuchs next argues that the court committed misconduct by permitting the prosecution to ask leading questions throughout the entire trial. First, Fuchs has not identified how such an evidentiary objection would be cognizable on § 2255 review. Second, Fuchs has not identified a single instance where the court permitted the government to ask a leading question in an inappropriate circumstance (the government, of course, would be, and was, permitted to ask leading questions on cross examination). <u>See</u> Fed. R. Evid. 611(c). Finally, even if he had done so, Fuchs has not explained how those leading questions affected the outcome of his trial.

In his reply brief, Fuchs belatedly identifies a single instance where this court permitted a leading question on direct examination. <u>See</u> <u>White</u>, 2013 WL 1499182, at *3 n.1. On pages 692-93 of the trial transcript, the court overruled an objection to a question Caulk identified as leading because the court ruled that the government was merely pointing the witness to an area of inquiry, rather than leading her to a specific answer. Fuchs has not argued or shown that this ruling was incorrect, or that it established some kind of pattern of permitting leading questions to be used by the government. Nevertheless, for all the foregoing reasons, this argument also fails.

## 4. Jury Issues

Fuchs next accuses this court of misconduct in the way it assembled and dealt with the jury pool. "Both the Fifth Amendment right to due process and the Sixth Amendment right to an impartial jury protect a defendant against juror bias." United States v. Torres-Chavez, ___ F.3d ___, No. 13-1240, 2014 WL 866424, at *8 (7th Cir. Mar. 6, 2014). "These rights guarantee a jury capable and willing to decide the case solely on the evidence before it, and consistent with the trial court's instructions." Id. (citation and quotation marks omitted). Fuchs cannot prevail for largely the same reasons set out supra dealing with his ineffective assistance argument on this basis—he fails to identify where in the record the only black juror was allegedly struck or provide any other evidence of it and the fact that the jury lacked mortgage industry knowledge is irrelevant. Additionally, Fuchs argues that the inclusion of a juror who happened to be a city manager biased his jury pool, but fails to explain how a city manager is unfit to function as a juror or how that particular prospective juror was biased against him. Finally, that prospective juror was only considered as an alternate, and was ultimately struck by Fuchs' counsel, so any potential bias the city manager may have had is irrelevant.

In his reply brief, Fuchs significantly expands this argument. But see White, 2013 WL 1499182, at *3 n.1. Specifically, he argues that the court "chastised" a juror on page 11 of the trial transcript where it informed the juror he answered a question not yet asked. The record makes it clear, however, that the court did not chastise the juror, it simply informed him that the question he answered (wherein he indicated his mother-in-law was a retired local police officer) was not the question asked (whether the juror was or had immediate family who had been an officer or employee of the United States government). Furthermore, Fuchs has not explained how this discussion with the court would have biased the potential juror against Fuchs. Finally, that prospective juror was excused and did not sit on the jury which heard Fuchs' case.

Next, he argues that the jury panel was biased because twenty-three prospective jurors apparently answered the questions about immediate family in government or law enforcement in the affirmative and twelve had previously served as a juror. Jury panels are selected randomly, however, and Fuchs fails to argue that any particular juror who was assigned to hear his case was biased against him. Fuchs next argues that the court belittled the jury on page 28 of the trial transcript where it informed the jurors of the importance of the jury duty and recognized the sacrifice that comes with that duty. No juror is belittled in that discussion, though. Even if the court had belittled the jurors (or a particular juror)—which it most certainly did not—Fuchs has failed to explain how that would have biased those jurors against him. Fuchs again takes issue with the court's recognition of the personal sacrifice that comes with jury duty during a different section of voir dire, although he fails to explain how the court recognizing those sacrifices somehow tainted the jury pool against him.

Finally, Fuchs also states that "Judge Kapala did help out a good friend" by excusing a juror, who had testified previously in state court proceedings over which this court presided when that witness worked for Illinois Family Advocate Social Services, all of which was disclosed on the record. That juror, however, was excused by stipulation of the parties based on the fact that he was professionally involved at the time of trial with credit counseling and mortgage foreclosure, not because the court was helping him in any way.

In short then, even if the arguments raised for the first time in the reply brief were not waived—and they were—Fuchs still has not met the standard necessary for the extraordinary relief pursuant to § 2255.

### 5. Presentence Investigation Report Errors

Fuchs next identifies a number of errors he alleges occurred in the probation officer's criminal history category calculations. Specifically, he identifies the same one-point and three-point mistakes this court has already addressed <u>supra</u>, except now he argues that this court is at fault rather than his attorney. Fuchs has not explained how this alleged sentencing error, without more, is cognizable on § 2255 review. <u>See</u> <u>Narvaez v. United States</u>, 674 F.3d 621, 627 (7th Cir. 2011) ("We have recognized that sentencing errors are generally not cognizable on collateral review, especially when such errors can be raised on direct appeal."). Regardless, as set out earlier, no calculation errors were made, so the assignment of fault is irrelevant.

### 6. Loss and Restitution Calculations

In a similar vein to the previous argument, Fuchs has reargued the same loss and restitution issues already dealt with <u>supra</u>, again assigning the blame this time to the court rather than to his assorted counsel or the prosecution. Fuchs has not explained how this alleged sentencing error, without more, is cognizable on § 2255 review. <u>See</u> <u>Narvaez</u>, 674 F.3d at 627; <u>Virsnieks v. Smith</u>, 521 F.3d at 718 . Nevertheless, for the same reasons as set out <u>supra</u>, this argument fails.

### 7. Fraud by Charles Fairgrieves

Fuchs next argues that this court committed some kind of unexplained misconduct because Charles Fairgrieves, the owner of Mortgage Solutions who allegedly conducted all of the business with the lenders, was not charged with a crime. Fuchs suggests that Fairgrieves has bribed someone (presumably this court given that he lists this argument under the "judicial misconduct" heading) to avoid prosecution. This court, needless to say, has no authority over charging individuals with federal crimes (aside from criminal contempt), and there is no evidence in the record or attached to Fuchs' motion to suggest this court accepted a bribe. To ease the conscience of all involved, however, the court affirmatively states it accepted no bribe from Fairgrieves (or anybody else, for that matter). Indeed, Fuchs points to nothing in the record establishing that Fairgrieves was involved in Fuchs' crimes. Even presuming that Fuchs is correct that Fairgrieves was in some way involved with Fuchs' crimes, Fuchs does not explain how the existence of an uncharged individual undermines the jury verdict against Fuchs. The government is not obligated to charge all individuals who may or may not have been involved in a given crime, and a failure to do so does not give rise to a right to undermine a jury verdict by those individuals who were charged and convicted by a jury of their peers. Thus, nothing here rises to the level of requiring the extraordinary relief of § 2255.

### 8. Consideration of the Supplemental Presentence Report at Sentencing

Fuchs next argues that this court erred, or committed some kind of misconduct, where it considered the supplemental presentence report which contained the Klotz narrative at Fuchs' sentencing. Fuchs fails to identify how this argument is a cognizable argument for relief under § 2255. <u>See</u> <u>Hawkins v. United States</u>, 706 F.3d 820, 823 (7th Cir. 2013) ("Suppose the probation service in recommending a sentence to a district judge makes a mistake in applying the (advisory)

guideline that the judge doesn't catch. As a result he imposes an above-guidelines sentence, which he wouldn't have done had he caught the error; nonetheless the sentence is below the statutory maximum. The error could not be corrected in a postconviction proceeding."). Nevertheless, this argument fails for the same reasons identified supra: that Fuchs has failed to offer any evidence to show that the supplemental presentence report was inaccurate and that he has failed to show prejudice as the court provided other aggravating factors which justify the upward variance irrespective of the supplemental report. Furthermore, as noted earlier, the government, Fuchs' attorney, and Fuchs himself all agreed that it was appropriate for the court to use that material for the purposes of sentencing. (Sentencing Tr. Vol. I, 16.); see Peretz, 501 U.S. at 936.

## 9. Sentencing Disparity

Fuchs' final argument raises the same sentencing disparity issues addressed supra, except that he again assigns blame to judicial misconduct rather than his attorney in this section. Fuchs fails to identify how this sentencing argument is a cognizable argument for relief under § 2255. See Narvaez, 674 F.3d at 627. Even if it is, the argument largely fails for the same reason it failed supra: Fuchs fails to cite any cases which show a disparate sentence in his amended motion and the cases cited in his reply brief fail to help him any further. Here, however, Fuchs also makes an additional argument not raised above, that the sentence was disparate not only as to other cases, but also as to his codefendants Anast and Gibson. First, the discrepancy is easy to account for: Anast and Gibson pled guilty and received credit for acceptance of responsibility, both had lower criminal history categories (I and II as compared to Fuchs' V), neither received an enhancement as the leader of the fraud, and neither lied on the stand and therefore received an obstruction enhancement. Second, the "purpose of § 3553(a)(6) is to eliminate unjustified sentencing disparities across judges (or districts) rather than among defendants to a single case." United States v. Durham, 645 F.3d 883, 897 (7th Cir. 2011). The Seventh Circuit refuses to consider arguments under § 3553(a)(6) based on codefendant sentences. See United States v. Sandoval, 668 F.3d 865, 873 (7th Cir. 2011) (noting the Seventh Circuit's "refusal to entertain sentencing challenges based on disparities between codefendants' sentences"); United States v. Omole, 523 F.3d 691, 700 (7th Cir. 2008) ("This court refuses to view the discrepancy between sentences of codefendants as a basis for challenging a sentence."). Accordingly, this argument also does not warrant the exceptional relief afforded by § 2255.

**III. CONCLUSION**

For the reasons set forth above, the motion to set aside, modify, or vacate the sentence pursuant to § 2255 is denied. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the court must consider whether to grant a certificate of appealability. Based on the foregoing analysis, Fuchs has not established that reasonable jurists could debate the correctness of the court's decision. Accordingly, the court declines to issue a certificate of appealability.

ENTER:

FREDERICK J. KAPALA

District Judge